UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

APPLETON PAPERS INC.,

        Plaintiff,

v.                                                        Case No. 11-C-318

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, and UNITED
STATES DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL
RESOURCES DIVISION,

        Defendants.

**DECISION AND ORDER**

Plaintiff Appleton Papers Inc. (API) made three requests to the Defendant agencies (herein "EPA" and "DOJ") under the Freedom of Information Act, 5 U.S.C. § 552. These agencies have withheld thousands of pages of documents, primarily pursuant to Exemptions 5 and 7(A). Following exhaustion of the administrative appeal process, API filed suit to obtain the records. The Defendants have now moved for summary judgment. For the reasons given below, their motion will be granted.

**I. Background**

The context of the dispute is the massive environmental cleanup action taking place in the Lower Fox River, which runs between Lake Winnebago and Green Bay. As detailed elsewhere, the cleanup of PCBs, being undertaken pursuant to CERCLA, is estimated to take several years and cost something on the order of one billion dollars. API has been named as a potentially responsible party

(PRP) and has spent significant sums, along with other PRPs, cleaning up the river. API, along with the NCR Corporation, has been named as a defendant in an enforcement action brought by the United States. The United States has itself been named as a counterclaim defendant in that case, and it is also a defendant in a related civil action seeking contribution.

**A. FOIA Request to DOJ**

In preparation for that and other litigation, the United States retained the services of environmental engineering contractors named Amendola Engineering, Boldt Engineering and TechLaw. These firms have produced draft reports and other documents for the government's use in litigation. API's particular interest for FOIA purposes appeared to be in the reports' estimates about the relative amounts of pollution released by various PRPs, particularly Georgia-Pacific.

In February 2010 API submitted a FOIA request seeking a full version as well as any drafts and supporting documentation of a May 10, 2000 report entitled "Preliminary Estimates of PCB Discharges to the Fox River," prepared by Amendola. In addition, API sought similar information about a report prepared by a technical consultant for the government containing updated estimates of PCB releases to the river. It also sought any other reports and supporting documentation regarding estimates of PCB discharges.

The government turned over some materials but withheld others. It placed the relevant documents into two different categories: one for working papers, drafts, emails, and the like; the other for draft reports, final reports and emails between DOJ attorneys and staff at the TechLaw firm. These documents make up 101 separate entries on a *Vaughn* index the government has provided. *See Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973). In withholding the documents, the government argued that all of the withheld documents are protected by the work product privilege, encoded in Exemption 5. It also cited other reasons for the withholding of some of the

documents, such as the attorney-client privilege and the deliberative process privilege. Finally, it invoked Exemption 7(A) to withhold some 63 documents on the belief that release of the documents could "reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

**B. FOIA Requests to EPA**

In addition to its request to the DOJ, API also made FOIA requests to the Environmental Protection Agency relating to the remedial design proposals at the Fox River Site. Since 1998, the Wisconsin Department of Natural Resources has been working with the EPA to study the Site and develop approaches for mitigating the PCB damage. These approaches, broadly speaking, include dredging the contaminated material in some places and placing caps on it in others. (Karl Decl., ¶¶ 15-16.) In 2010 the EPA and Wisconsin DNR issued two documents that are the subject of API's FOIA requests. One is an Explanation of Significant Differences (ESD), which explained some differences in cleanup remedies versus the remedies originally proposed. (This ESD was addressed in this Court's July 5, 2011 Decision and Order at 13, Case No. 10-C-910.) The other document is called a Criteria Analysis Memorandum (CAM), which supported the ESD. (DPFOF ¶ 75.) In June 2010 API requested records relating to these two documents. In addition, in August 2010 API requested information pertaining to a July 15, 2010 letter from the EPA and WDNR indicating that the proposal of NCR and Georgia-Pacific to cap, rather than dredge, certain parts of the river would be disapproved.

In response to the ESD/CAM document requests, EPA ultimately withheld some 112 documents, primarily under the deliberative process privilege. It also invoked Exemption 7(A) (law enforcement exemption), Exemption 5 (attorney-client and work product privilege), and Exemption

6 (personal privacy). And, in response to the August 2010 FOIA request, EPA withheld or redacted 35 documents on similar privilege grounds.

**II. Analysis**

The Defendants focus on the work product doctrine, which in their view insulates all of the DOJ documents from disclosure and many of the EPA documents as well. They also cite the deliberative process privilege and, to a lesser extent, some of the other exemptions described above.[1]

**A. Work Product Doctrine**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The work product doctrine, codified in Fed. R. Civ. P. 26(b)(3), was designed to protect the thoughts, strategies and opinions (the "work product") of an attorney that the attorney rendered in, or in anticipation of, litigation. The work-product doctrine shields materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). "FOIA Exemption 5 incorporates the work-product doctrine and protects against the disclosure of attorney work product." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005). The doctrine has been extended to things and other materials that have been prepared in anticipation of litigation for a party or its attorney. In addition to shielding an attorney's actual thoughts and impressions, one purpose of the doctrine is to create a

---

[1]API notes that it is not presently challenging the adequacy of the government's search for documents but expresses the desire to bring such a challenge at a later date, if necessary. But the government moved for summary judgment on that issue and briefed the issue thoroughly. Accordingly, this would have been the time to challenge it. Any challenge to the adequacy of the search is waived, and the Defendants are entitled to summary judgment on that issue.

"zone of privacy" to shield a party's lawyers and those working on their behalf from scrutiny by the opposing side. *Hobley v. Burge,* 433 F.3d 946, 949 (7th Cir. 2006.) Absent such privacy, an opponent could get "a free ride on the research and thinking of his opponent's lawyer." *Id.* (quoting *United States v. Frederick,* 182 F.3d 496, 500 (7th Cir. 1999)).

**1. The Relevant Documents are Work Product**

The government has cited the work product doctrine in withholding all of the DOJ documents and most of the EPA documents. As discussed further below, I limit my work product analysis to the DOJ documents, which consist of the technical reports, drafts, data and other communications about those reports. API does not dispute that the materials in question were prepared in anticipation of litigation. Instead, Plaintiff argues that the documents are not work product because "purely factual material" may be severable from the rest of the reports or communications. These kinds of technical information would not reveal litigation strategies because the opinions of and data used by the report authors and consultants would not contain attorney opinions or impressions.

API does not address Fed. R. Civ. P. 26(b)(4)(D), however, which provides that a party may not discover "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation . . . and who is not expected to be called as a witness at trial." Obviously, if one party is openly citing an expert's opinion *in* litigation, that expert and much of his underlying thought processes will be subject to heightened scrutiny. But when the retained expert is not expected to testify, as here, the rule allows a greater zone of privacy for those kinds of reports, the theory being that a party should be allowed to conduct its own private investigations without fear that the results would have to be turned over to the other side. "[C]ourts addressing a party's attempted use of the opposing party's expert witness have distinguished

testifying experts from those who are retained only as consultants. Under Rule 26(b)(4)(D), consulting experts are not subject to discovery unless exceptional circumstances exist." *Guinn v. CRST Van Expedited, Inc.,* 2011 WL 2414393, *2 (W.D. Okla. 2011). Thus, even "pure" facts (which presumably do not contain an attorney's thoughts) are shielded on the grounds that a litigant should be entitled to conduct its own investigation without needing to turn the results over to the other side.

The Committee Notes make the distinction clear: "[a]ttorneys may employ two sets of experts—one for purposes of consultation and another to testify at trial—because disclosure of their collaborative interactions with expert consultants would reveal their most sensitive and confidential case analyses." Fed. R. Civ. P. 26 advisory committee's note (2010). Here, because it is conceded that the expert reports and communications were obtained and made in anticipation of litigation, Rule 26(b)(4)(D), incorporated into Exemption 5, would shield them in civil litigation. Moreover, the policy underlying the work product doctrine applies with full force. The government's attorneys retained the services of consultants to aid the government in its expected litigation with the Plaintiff. Allowing Plaintiff unrestricted access to the data and reports the government obtained would allow it to freeload on the government's efforts. Naturally the policies of FOIA support open government, but when the government is a litigant on behalf of the citizenry, it does the taxpayer no good to force the government-litigant to disgorge the materials it uses to gain advantage in litigation on behalf of the taxpayer. Accordingly, I conclude that all of the withheld DOJ materials constitute work product.

### 2. Agency Adoption

API argues that Exemption 5 does not protect documents under the work product doctrine if the documents are adopted as or incorporated into an agency policy. "The Department's view that

it may adopt a legal position while shielding from public view the analysis that yielded that position is offensive to FOIA." *National Council of La Raza v. Department of Justice,* 411 F.3d 350, 360 (2d Cir. 2005) (citation omitted). In that case, the Department of Justice changed its policy to allow state and local governments the authority to enforce civil violations of federal immigration law. In supporting and explaining the new policy, the Department repeatedly referred in public to an unpublished 2002 memorandum prepared by the Office of Legal Counsel. The court found that it was "clear that the Attorney General and his high-level staff made a practice of using the OLC Memorandum to justify and explain the Department's policy and to assure the public and the very state and local government officials who would be asked to implement the new policy that the policy was legally sound." *Id.*

In *La Raza* there was an explicit agency policy—that local law enforcement could enforce federal immigration law —and the agency explicitly used an unpublished memorandum in adopting that policy. Here, there is no comparable "policy" of either the DOJ or the EPA in play. Both agencies believe certain parties are liable for costs incurred in cleaning up the Fox River Site, but that is simply a litigation position rather than a policy of the agency. To argue as API does that the government relied on and even cited portions of the consultants' work in formulating its litigation strategy is merely to say that the consultants' work is work product itself. If that constitutes "adopting" an agency policy, then the adoption exception would swallow Exemption 5 itself because government litigants could never cite the work of the consultants it hires without subjecting that work to full disclosure.[2]

---

[2] In fact, it is not at all clear that the "agency adoption" argument would apply in the litigation/work product context. (*La Raza* was a deliberative process case.) As noted here, applying an exception to Exemption 5 based on "adopting" the work of paid consultants would make little sense, because the entire point of hiring such a consultant is that the litigant will "adopt" or at least rely on his work.

### 3. Disclosure of Results

API also argues that because some of the results of the consultant experts have been released, the DOJ must produce all of the underlying technical data and other materials underlying those results. For this principle API relies on *Goodrich Corp. v. U.S. Environmental Protection Agency,* 593 F. Supp.2d 184 (D. D.C. 2009). That case involved an EPA model that "simulat[es] the downward movement of perchlorate through the vadose zone at the Site (i.e., the zone, approximately 420 feet deep, between the ground surface and the underlying groundwater)." *Id.* at 187. The EPA had presented a slide show including both the model's results and the data to the Regional Board, which shared the information with the Plaintiff's law firm. The district court concluded that sharing the model constituted a waiver. By sharing the data and not zealously guarding its privacy, the EPA had opened the door to disclosure. Moreover, the request for production was limited to the model itself rather than an open-ended request for a large volume of documents.

Although *Goodrich* ostensibly helps API's claim, it is weakened by the fact that the court did not discuss Fed. R. Evid. 502(a)(2), which was enacted in 2008. That rule "abolishes the dreaded subject-matter waiver, i.e., that any disclosure of privileged matter worked a forfeiture of any other privileged information that pertained to the same subject matter. Instead, if there has been a disclosure of privileged information, the disclosure of additional privileged information will be required if both documents 'concern the same subject matter; *and* (3) they ought in fairness to be considered together.'" *Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.,* 266 F.R.D. 1, 11 (D.D.C. 2010) (quoting Fed. R. Evid. 502(a)(2)). In other words, although the disclosure of some privileged material could result in a waiver of the privilege as to *other*, related, material, that will only occur if the non-disclosed documents are required to ensure

that the presentation of information has been fair and not misleading. According to the committee notes, "subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner," a circumstance the notes suggest would be an "unusual" situation.

Applying that rule here, I cannot find a waiver. The government has indeed cited its consultants' work in litigation before this court, but only in passing and certainly not in order to make a dispositive point. It states that to the extent it has shared some of the report with the other side, that was done in an effort to facilitate settlement discussions. Given the limited disclosures made here (which involved wiggle words like "estimates" and "suggestions"), it cannot be argued that the government's disclosures were done selectively or that it had cherry-picked certain data in order to create a misleading impression. Accordingly, I do not find that the government has waived any privilege with respect to its consultants' work.[3]

**B. Deliberative Process Privilege**

I have concluded above that the work product doctrine applies to many of the documents at issue here, particularly the DOJ documents relating to the consultants' work. Other documents, such as those withheld by EPA, appear less likely to be shielded by the work product doctrine, as they were prepared in the course of the EPA's ongoing role in managing the Site rather than in anticipation of litigation. Litigation, of course, was already underway, but the EPA documents do not appear to be linked to any particular litigation strategy. Instead, they are directed at explaining why the proposed remedies remain viable despite significant cost increases or why capping (instead of dredging) would not be allowed. These actions appear to be within EPA's normal course of

---

[3]Of course, if the government wishes to cite its consultants' reports in the future, it may open itself up to a similar waiver argument if the portions of the reports it cites would result in an unfair presentation of information.

business rather than in anticipation of litigation. Accordingly, in ruling on the EPA documents I will begin with the government's assertion of the deliberative process privilege.[4]

To recall, the documents the EPA withheld fall into two categories. The first are documents responsive to API's June 2010 request for documents relating to the ESD and CAM; these consist of internal drafts, comments and proposed modifications to the Explanation of Significant Differences and Criteria Analysis Memorandum. The EPA argues that the withheld documents would reveal the EPA's own internal discussions about the various options it was considering and the strengths and weaknesses of its chosen course. The second set of documents pertains to API's August 2010 request for information about the July 15, 2010 letter concerning the remedial design for OU3. The letter notified the parties that EPA intended to disapprove plans for capping certain areas of the riverbed.

API does not contest the applicability of the deliberative process privilege to these documents.[5] Its only challenge to the EPA documents is limited to a somewhat cursory argument that some of the documents can be redacted sufficiently to protect the government's privileged information. As an example, API cites a spreadsheet that was attached to an email. The spreadsheet contains purely factual data that would not reveal any deliberative processes. The government notes, however, that the spreadsheet in question was prepared by a consultant for API. As such, the document should already be in the control of API.

---

[4]Given the likelihood of litigation in this context, it could be argued that almost any documents the EPA prepared were done in anticipation of litigation. But accepting such an argument would create a massive work product exception shielding the disclosure of countless EPA documents, and it is doubtful that Exemption 5 was intended to be so large.

[5]Its brief argues that the DOJ documents are not shielded by the deliberative process privilege, but it is silent on the EPA documents.

Apart from that single example, API has not explained how the government's segregability analysis has been deficient. It is true that the government "has the burden of demonstrating that no reasonably segregable information exists within the documents withheld." *Army Times Pub. Co. v. Department of Air Force,* 998 F.2d 1067, 1068 (D.C. Cir. 1993). But it is also true that summary judgment is the moment in a lawsuit in which the parties have to speak, or forever hold their peace. *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 260 (1st Cir. 1999)*; see also, Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003) ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit . . .") In other words, a FOIA plaintiff cannot make a generic, untargeted objection to the government's reasoned explanation for withholding documents and expect to win. Otherwise, a FOIA plaintiff could simply rest on a blanket assertion of disclosure inadequacy and require the government to explain in court *each* of possibly hundreds or thousands of documents being withheld. Summary judgment requires more of non-moving parties. With the exception of the spreadsheet described above, API has not identified any documents it believes should be provided in redacted form or segregated from other material. In the face of reasonable explanations for the non-disclosure, along with more than 100 pages of *Vaughn* indices and supplemental disclosures, a FOIA plaintiff needs to do more to defeat summary judgment.

For the same reasons, an *in camera* review of the withheld documents would not be appropriate either. It is not the proper role of a court to sift through documents to determine whether the government has met its burden as to each and every one of them. Ours is an adversarial system that relies on the parties to make their arguments on discrete issues, which judges then decide. We do not ask a judge to consider every possible issue in a case without any guidance from the objecting party: "in camera inspection should be limited as it is 'contrary to the traditional judicial role of deciding issues in an adversarial context upon evidence openly produced in court.'

" *Missouri Coalition for Environment Foundation v. U.S. Army Corps of Engineers,* 542 F.3d 1204, 1210 (8th Cir. 2008) (citation omitted). Accordingly, I conclude the government is entitled to summary judgment on the EPA documents as well.

**III. Conclusion**

For the reasons given above, I conclude that the documents withheld by the DOJ properly constitute work product and that the privilege has not been waived. I further conclude that the remaining documents are protected by the deliberative process privilege. The Defendants' motion for summary judgment is **GRANTED** and the case is dismissed.

**SO ORDERED** this   29th   day of March, 2012.

                                                    s/ William C. Griesbach
                                                  William C. Griesbach
                                                  United States District Judge